UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARRIE ANN FRAZIER,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:16-cv-01808 TLN CKD<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court recommends that plaintiff's motion for summary judgment be denied and defendant's cross-motion for summary judgment be granted.

BACKGROUND

Plaintiff, born September 16, 1981, applied on October 29, 2009 for disability insurance benefits (DIB) and supplemental security income (SSI), alleging disability beginning April 1, 2008. Administrative Transcript ("AT") 118-129. Plaintiff alleged she was unable to work due to a combination of impairments including anxiety, depression, bipolar disorder, migraines, and panic attacks. AT 141. In a decision dated November 18, 2011 the ALJ determined that plaintiff

was not disabled[1] and could perform her past relevant work as a housekeeper. AT 15-28.

Plaintiff sought judicial review of this decision in Frazier v. Colvin, No. 2:13-cv-00756 GEB CMK (E.D. Cal.). In findings and recommendations issued September 5, 2014, the magistrate judge found that the ALJ's conclusion that plaintiff's migraine headaches were not a "severe impairment" at Step 2, was unsupported by substantial evidence, and that the case should be remanded for further proceedings on that issue. AT 522-23. The magistrate judge also found the ALJ's credibility determination to be erroneous and an alternative ground for remand. AT 524-525. The court did not address the remainder of plaintiff's arguments. AT 525. The district court adopted these findings and recommendations, granted plaintiff's motion for summary

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

judgment, and remanded the case for further proceedings consistent with the findings and recommendations.

After remand proceedings before the same ALJ, the ALJ issued a second decision dated April 13, 2016. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> 2. The claimant has not engaged in substantial gainful activity since April 1, 2008, the application date.
>
> 3. The claimant has the following severe impairments: degenerative disk disease of the lumbar spine, migraine headaches, restless leg syndrome, insomnia, right carpal tunnel syndrome, depression, anxiety, bipolar disorder, posttraumatic stress disorder, borderline intellectual functioning, borderline personality disorder, bipolar disorder, and borderline personality disorder.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work. The claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently. She can perform simple, unskilled work with no contact with the public and only occasionally fellow employee contact. She can frequently perform frequent manipulation with the dominant right hand. She is unlimited in her use of the left upper extremity.
>
> 6. The claimant is capable of performing past relevant work as a housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2008, through the date of this decision.

AT 361-386.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) erroneously finding that plaintiff was not presumptively disabled in Step 3; (2) improperly weighing the medical evidence of plaintiff's physical and mental impairments; (3) discounting plaintiff's subjective accounts of her limitations; (4) discounting lay witnesses'

3

testimony; (5) assessing plaintiff's RFC without substantial evidence; (6) finding plaintiff could perform past relevant work as a housekeeper; and (7) finding she could perform jobs which existed in significant numbers in the national economy.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

I. Presumptively Disabling Impairment

Plaintiff contends that, contrary to the ALJ's finding, she satisfied Section 12.05 of the Listing for Intellectual Disability. She contends that she had a valid I.Q. score of 59, was

4

intellectually disabled before age 22, and had additional severe impairments that limited her ability to perform work-related activities. Plaintiff argues that the evidence shows that she meets both Sections 12.05B and 12.05C of the Listing for Intellectual Disability. (ECF No. 20 at 21-23.)

The Social Security Regulations "Listing of Impairments" is comprised of impairments to certain categories of body systems that are severe enough to preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). The Listings under 12.05 describe intellectual disabilities consisting of a "significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," i.e. the onset of the impairment occurred before the individual was age 22. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. The manifested deficit in adaptive functioning is a prerequisite that must be met by Listings 12.05A-D, along with the individual requirements for each subdivision.

In order to meet Listing 12.05B, a claimant must establish a valid verbal, performance, or full scale IQ of 59 or less. 20 CFR § 404, Subpt P, App'x 1, § 12.05B. The Ninth Circuit has explained that

> Listing 12.05C has three main components: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or mental impairment causing an additional and significant work-related limitation.

Kennedy v. Colvin, 738 F.3d 1172, 1176 (9th Circ. 2013). Plaintiff has the burden of proving she has an impairment that satisfies these criteria. Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2004).

At Step 3, the ALJ found that plaintiff met none of the 12.05 requirements in part because she was "able to take care of her personal needs. She is able to dress and bathe herself, perform household chores and care for her children." AT 363. "Although the claimant states that she is unable to do anything when she has a severe migraine headache," the ALJ wrote, these occurred only two to three times per week. AT 363. The ALJ further found that "no evidence" established

5

that plaintiff was intellectually disabled prior to age 22.[2] AT 363. The ALJ found a February 2010 test measuring her IQ at 59 to be "invalid" and instead relied on a September 2011 test measuring her IQ at 71. AT 363. This IQ score served to disqualify plaintiff from both the 12.05 B and C listings, although the ALJ cited additional reasons.

In February 2010[3], clinical psychologist Dr. Sid Cormier examined plaintiff as part of her application for benefits. AT 226-231. He assessed her with a verbal IQ score of 63, a performance IQ score of 60, and a full-scale IQ score of 59, which placed her "level of intellectual functioning within the mildly retarded range." AT 229. Dr. Cormier stated plaintiff's test scores "appear to reflect valid indications of her current levels of cognitive functioning[.]" AT 228. Nineteen months later in September 2011, psychologist Dr. Kitt Murrison performed a consultative examination as part of plaintiff's application for benefits. AT 348-355. Dr. Murrison assessed plaintiff's full-scale IQ as 71. AT 353-354.

Defendant argues that the ALJ properly accepted Dr. Murrison's opinion and rejected Dr. Cormier's opinion, thus his rejection of Dr. Cormier's IQ results was also proper. In support, defendant cites Castle v. Comm'r of Soc. Sec., 2014 WL 3943411 (S.D. Cal. Aug. 12, 2014), in which the magistrate judge found that the ALJ properly rejected a claimant's IQ scores falling below 70 where the ALJ determined that these scores were "invalid and inconsistent with her demonstrated intellectual function." Id. at *16. The court noted that the ALJ "provided specific, legitimate reasons" to support the finding that the claimant's low IQ scores were inaccurate. Id.

Plaintiff counters that, while the ALJ rejected the narrative portion of Dr. Cormier's opinion, he supplied "no reason" for rejecting Dr. Cormier's I.Q. test results. Plaintiff argues this

---

[2] Plaintiff points out that she only completed schooling through eighth grade (though she attended high school "off and on") and was enrolled in special education classes. AT 36, 146, 198, 227, 351, 400, 661. See Borders v. Colvin, 2014 WL 6901177, *4 (D. Or. Dec. 3, 2014) ("The claimant need not show a diagnosis of mental retardation or an IQ score in that range before age 22 in order to meet the onset requirement. [Citations.] Rather, courts consider circumstantial evidence such as attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history.") (internal citations omitted).

[3] The ALJ refers to this as the "February 2011" report, though it occurred a year earlier.

6

was improper under Castle, which held that "[i]f an ALJ rejects the results of an IQ test, he must state his reasons for doing so." 2014 WL 3943411, *13.

"Courts in the Ninth Circuit have held that where multiple or conflicting IQ scores are available, the operative score for purposes of determining whether a claimant's impairments meet or equal Listing 12.05(C) is the lowest 'valid verbal, performance, or full scale IQ' score the claimant has received." Low v. Colvin, 2014 WL 4968285, *5 (E.D. Cal. Sept. 30, 2014), citing Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987); Ray v. Chater, 934 F. Supp. 347, 350 (N.D. Cal. 1996) (finding that "it can be inferred that when multiple IQ scores are available the Regulations prefer the lowest score"); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c). In Low, the court concluded that the ALJ properly "invalidated the lower test score because it was inconsistent with the Plaintiff's demonstrated activities and abilities as reflected in the record as a whole. By expressly mentioning Listing 12.05 and explaining why he found it did not apply, the ALJ met his burden to explain why the IQ score was invalid based on other evidence in the record." 2014 WL 4968285, *7.

Here, the ALJ acknowledged plaintiff's two IQ scores and stated that, "for reasons described later in this decision," Dr. Cormier's findings were deemed invalid, and the IQ score of 71 was "a more accurate assessment of the claimant's mental functioning." AT 363. At a subsequent step, discussed below, the ALJ ascribed little weight to Dr. Cormier's opinion because it was inconsistent with both plaintiff's reports of daily living and Dr. Murrison's opinion. AT 381-382. Under Castle and Low, the ALJ provided sufficient explanation why the lower IQ score was rejected in favor of one more consistent with plaintiff's abilities as reflected in the record.

II. Medical Evidence

A.  Physical Impairments

Plaintiff next claims that the ALJ failed to provide sufficient reasons for rejecting the opinions of plaintiff's long-term treating physician, Dr. Harold Budhram, who treated her between 2009 and 2015.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

7

1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester , 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining

In assessing plaintiff's residual functional capacity ("RFC"), the ALJ considered Dr. Budhram's June 2015 and July 2015 reports of plaintiff's ability to do work-related activities.  AT 376, 760-768, 792-796.  In June 2015, Dr. Budhram found that plaintiff could stand or walk for up to two hours, total, in an eight-hour workday, along with other limitations as to sitting, standing, and walking.  AT 762-763.  He also found that she was limited in her lower extremities.  AT 764.  As to postural limitations, he reported that she could "never" kneel or crawl and could "occasionally" climb, balance, crouch, stoop, twist, or turn.  AT 764.  In support, Dr. Budhram cited plaintiff's lumbar pain.  AT 765-765.  Dr. Budhram also found that plaintiff would need to take up to three unscheduled breaks per workday of up to fifteen minutes each, citing "pain."  AT 766-767.  He found that she was "incapable of even low stress work."  AT 767.

8

Dr. Budhram's July 2015 report concerned plaintiff's migraines. He found that she suffered between two and four per week, during which she would be "precluded from performing even basic work activities." AT 793, 795. He found that plaintiff's headaches would interfere with her ability to work "at least 25% of the time," that she would likely be absent from work four days per month, and that she was capable of low stress jobs. AT 795-796.

In evaluating RFC, the ALJ acknowledged that "we generally . . . give more weight to opinions from . . . treating sources" but found that "Dr. Budhram's opinion is not well supported by his treatment records which show only mild findings of the lumbar spine." AT 380. "His opinion of her limitations due to migraine pain are similarly unsupported by objective findings or by evidence she requires treatment for severe migraine pain with injections. . . . [T]his portion of his opinion seems largely based on her subjective reports." AT 380. (The ALJ's discounting of plaintiff's subjective complaints is discussed below.)

In contrast, the ALJ credited the opinion of consultative examiner Dr. Wagner, who examined plaintiff in November 2015 after reviewing her medical records. AT 806-810. Dr. Wagner found plaintiff to have "a history of low back pain with minimal findings on CT scan" and long-lasting headaches two or three times a week. AT 807, 810. Dr. Wagner concluded that plaintiff was capable of performing a range of medium work. AT 810. The ALJ found this opinion "consistent with the medical evidence of record" and assigned it "great weight." AT 382.

Considering the record as a whole and the reasoning of the ALJ, the court finds that the ALJ did not err in discounting the functional limitations assessed by Dr. Budhram. Rather, he gave specific and legitimate reasons for discounting Dr. Budhram's opinion, relied on Dr. Wagner's opinion as substantial evidence, and permissibly resolved conflicting evidence by finding plaintiff was capable of performing a range of light work.

B. Mental Impairments

Plaintiff next claims the ALJ erred by failing to credit Dr. Cormier's February 2010 opinion, discussed above with respect to her IQ score. AT 226-231. As summarized by the ALJ, Dr. Cormier "diagnosed her with bipolar I type personality developmental disorder, mild mental retardation" and disorders in reading and mathematics. AT 362. "Dr. Cormier opined that

claimant was virtually unable to perform work from a mental standpoint. He opines her psychotic disorder coupled with her mild mental retardation prevents her from performing many activities from a mental standpoint required of work." AT 381.

The ALJ rejected Dr. Cormier's opinion in part because it was inconsistent with the opinions of Dr. Murrison and plaintiff's long-term treating psychiatrist Dr. Imran Khan. AT 381-382-; see AT 305-314. The ALJ noted that Dr. Khan's treatment of plaintiff concerned PTSD, depression, anxiety and "psychosocial stressors" rather than "hallucinations and psychoses" as referenced by Dr. Cormier. The ALJ wrote that plaintiff's ability to work at Burger King[4] "undermine[d]" Dr. Cormier's opinion that she was significantly limited in her ability to interact socially. AT 382. The ALJ also found that Dr. Cormier's opinion "that she is unable to even perform simple tasks is not supported by her reports that she can do simple activities of daily living and work a bit in 2014, nor is it consistent with Dr. Murrison's opinion." AT 382. Following a 2011 evaluation, Dr. Murrison opined that plaintiff "could perform basic, simple and repetitive tasks as she has done previously as a housekeeper." AT 355.

Defendant argues the ALJ properly rejected Dr. Cormier's opinion as inconsistent with the weight of medical evidence, citing "numerous mental status examinations that are not consistent with the extreme limitations found by Dr. Cormier." (ECF No. 23 at 20.) In fact, plaintiff's mental status was repeatedly assessed as normal. AT 305, 308, 313, 773, 782, 823, 829. Moreover, though the ALJ found GAF scores to have limited evidentiary value (AT 382), the record contains multiple GAF scores in the moderate or mild range[5], suggesting that Dr. Khan

---

[4] Plaintiff testified that she was last employed as a cashier at Burger King for seven months in 2014, but could not perform the job properly due to her learning disability. AT 401-402.

[5] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). Id. A GAF of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school function (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Id.

(among others) did not find plaintiff to have severe deficits in psychological or social functioning. AT 306, 308, 314, 354, 776, 783. Finally, the ALJ found plaintiff's ability to perform daily activities inconsistent with the limits assessed by Dr. Cormier. AT 382. The ALJ noted record evidence that plaintiff could perform childcare, cleaning, making simple meals, swimming, socializing, and attending church.[6] AT 366-367. See Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600-602 (9th Cir. 1999) (ALJ properly rejected treating physician's assessed limitations where these conflicted with evidence of plaintiff's ability to function socially and perform daily activities).

Based on this record and the reasons cited by the ALJ, the undersigned finds that the ALJ did not err in rejecting the mental limitations assessed by Dr. Cormier.

III. Subjective Complaints

In Frazier v. Colvin, No. 2:13-cv-00756, the court found that in the first agency decision on plaintiff's claims, the ALJ failed to provide legally sufficient reasons to support his adverse finding as to plaintiff's credibility, and remanded on this issue. AT 525.

Assessing plaintiff's RFC in the second decision, the ALJ again found plaintiff less than credible about the severity of her symptoms. AT 378-380. In support of this conclusion, he cited plaintiff's long-term methamphetamine and marijuana use and her 2010 statement to Dr. Cormier that she had been sober two years, which was inconsistent with the evidence. In 2013, plaintiff was "evasive when asked about the frequency of her usage." AT 378. The ALJ concluded that plaintiff was "not particularly truthful with her treating sources regarding her ongoing use of substances of abuse." AT 379. See Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (holding ALJ properly relied on claimant's statements about his drinking, which were inconsistent with medical evidence, as a basis for adverse credibility finding).

The ALJ also cited the conservative treatment of her symptoms with medication and therapy. AT 379. He cited medical evidence suggesting some of her reported symptoms stemmed from social stressors and a history of risk-taking behavior. AT 379. The ALJ

---

[6] Though plaintiff testified in 2015 that she could not do many of these things any longer (AT 403-412), this goes to the issue of her credibility, discussed below.

11

concluded that plaintiff's treatment records "do not support that she has disabling psychiatric conditions." AT 379. Similarly, the ALJ found that "treatment records do not support the level of severity she alleges regarding her physical conditions." AT 379. As noted above, the ALJ additionally found that plaintiff's work at Burger King was "inconsistent with her claim of disability." AT 380. The ALJ concluded with a discussion of the medical record, which he concluded "does not support the level of severity the claimant alleges." AT 380. The ALJ's weighing of opinions as to plaintiff's mental and physical limitations were discussed above.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). The ALJ may reject an opinion premised on plaintiff's properly discredited subjective complaints. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.

Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ provided valid reasons for discounting plaintiff's subjective complaints, citing her less than candid statements about her drug use, her work history, her record of generally conservative treatment, and medical opinions inconsistent with the claimed severity of her symptoms. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Comm'r Soc. Sec. Admin., 553 F.3d 1155, 1161 (9th Cir. 2008). The court concludes that, unlike in the first decision, the ALJ supplied legally sufficient reasons to make an adverse credibility finding.

IV. Lay Testimony

Plaintiff contends that the ALJ failed to provide sufficient reasons for rejecting the testimony of six lay witnesses: plaintiff's stepfather Kevin Henninger; her friend Kay Pedergast; her friend Shelley Aubrey; her daughter Charitee Frazier; her sister Shonette Hopper; and her niece Samantha Knapp. See AT 382-383. "The ALJ rejected the testimony of all these witnesses because the ALJ found that their testimonies were not consistent with the medical evidence," plaintiff writes, arguing that this reason was neither "legitimate" nor "germane" as required. (ECF No. 24 at 19.) Notably, plaintiff argues, the ALJ failed to address lay witness testimony that plaintiff suffered from panic attacks. See AT 657, 658, 661, 663.

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. "Where the ALJ has first found a claimant not credible, the ALJ may subsequently reject lay testimony because it essentially reproduces the claimant's

testimony." Lee v. Astrue, 2010 WL 5662964, *8 (D. Or. Oct. 27, 2010), citing Valentine v. Comm'r, 574 F.3d 685, 694 (9th Cir. 2009).

The ALJ did not assess these witnesses' statements one by one, but summarized his findings as to "the statements of numerous third parties" as follows:

> These third party statements are not consistent with the evidence that as discussed above shows mild findings regarding her back condition, no treatment for carpal tunnel . . . , and consistent treatment over a long period of time for her migraine headaches and restless leg syndrome. The opinions are not fully consistent with the evidence of mental conditions including symptoms, treatment, and medical opinion which supports that while claimant may have some interruptions from her mental conditions she is capable of a wide range of work from a mental standpoint. Thus the undersigned finds the statements are not consistent with the preponderance of the evidence or opinions of examining and reviewing physicians and assigns them little weight.

AT 382-383.

By providing this rationale, the ALJ sufficiently explained his reasons for discounting the lay witness testimony in the aggregate. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (holding that ALJ "erred in failing to explain her reasons for disregarding the lay witness testimony, either individually or in the aggregate."); see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (holding that, where "the ALJ provided clear and convincing reasons for rejecting claimant's own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."). The lay statements regarding plaintiff's panic attacks are sufficiently addressed by the ALJ's finding that, "while claimant may have some interruptions from her mental conditions she is capable of a wide range of work from a mental standpoint."

V. Residual Functional Capacity

Plaintiff next argues that the RFC finding that plaintiff could perform light work with certain limitations is not supported by substantial evidence. Plaintiff contends that the RFC does not incorporate the limitations assessed by Dr. Budhram and Dr. Cormier concerning plaintiff's migraines and mental impairments, respectively. However, the ALJ's assignment of little weight to these opinions was discussed above and found to have sufficient support in the record.

14

Plaintiff also asserts that her documented panic attacks and anxiety are not reflected in the RFC.

Plaintiff points out that, while the ALJ gave great weight to Dr. Wagner's opinion, the RFC did not incorporate Dr. Wagner's finding that plaintiff could sit, stand or walk for only one hour without interruption. AT 801. Defendant counters that Dr. Wagner made this finding in a checkbox opinion, and that the ALJ permissibly relied on the narrative portion of his opinion in which he stated that plaintiff could stand or walk up to six hours, and had "[n]o limitations, normal breaks" with respect to sitting. AT 810. See Molina, 674 F.3d at 1111-12 ("We have held that the ALJ may permissibly reject check-off reports that do not contain any explanation of their basis of their conclusions") (quotation omitted).

Plaintiff also asserts that the ALJ erred by failing to his include in the RFC his own findings that plaintiff had "moderate" difficulties with regard to concentration, persistence, or pace. AT 364. See Lubin v. Comm'r of Soc. Sec., 507 Fed. Appx. 709, 712 (9th Cir. 2013) ("The ALJ must include all restrictions in the residual functional capacity determination and the hypothetical question posed to the vocational expert, including moderate limitations in concentration, persistence, or pace."). However, in Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008), the Ninth Circuit found that an RFC limiting plaintiff to "simple tasks," as in the instant case, "properly incorporated the limitations identified by [doctors], including those related to pace and the other mental limitations regarding attention, concentration, and adaption."

Finally, in a separate claim, plaintiff cites findings by Dr. Cormier purporting to show that, contrary to the ALJ's findings, she "cannot meet the mental demands of unskilled work."

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must

15

consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4).

For the reasons discussed above, the court finds that the ALJ met this burden; and, accordingly, concludes that plaintiff's assessed RFC was adequately explained and grounded in substantial evidence.

VI. Past Relevant Work

Plaintiff claims that that the ALJ committed legal error when he found that she had past relevant work as a housekeeper, because plaintiff's job as a housekeeper did not rise to the level of substantial gainful activity[7]. Defendant argues that the record shows plaintiff's income as a housekeeper met SGA levels, and that any such error is harmless because the ALJ made an alternative finding that plaintiff could perform multiple other jobs that exist in significant numbers in the national economy. AT 384-386. As discussed below, the undersigned concludes that the ALJ's alternative Step Five finding is supported by substantial evidence, such that any error as to past relevant work is harmless.

VII. Jobs in National Economy

Plaintiff claims that the hypothetical posed to the vocational expert did not include all her limitations "as demonstrated above." See AT 383. However, as the RFC was found to be supported by substantial evidence, this claim is resolved.

Plaintiff also challenges the ALJ's finding that there are other jobs existing in the national economy that she is also able to perform," e.g., hand packager, electronic accessories assembler, conveyor bakery worker, and clearance cutter. AT 383-384. Plaintiff argues that the VE's testimony on this point was not reliable or valid, because he arrived at certain answers to the ALJ's questions by estimation. AT 438-439. However, the VE merely extrapolated from published job numbers to account for any hypothetical limitations. The VE explained his method, adding that what VEs were "trying to do is give the closest estimate that we can to be responsive

---

[7] SGA is work activity that (1) involves significant physical or mental activities, (2) for pay or profit. 20 C.F.R. § 404.1572. Earnings are the primary consideration in determining whether work activity is substantial gainful activity. Id. at § 1574(a)(1).

to the questions of the Judge and to the questions of counsel." AT 439.  The court finds that the ALJ did not commit reversible error by relying on the VE's testimony on available jobs.

CONCLUSION

For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 20) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 23) is granted; and

3. Judgment is entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 5, 2017

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/frazier1808ssi.fr